No. 13-30315
(consolidated with No. 13-30329)

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

IN RE:  DEEPWATER HORIZON

_____

On Appeal from the United States District Court
for the Eastern District of Louisiana
MDL No. 2179, Civ. A. No. 12-970

_____

## REPLY IN SUPPORT OF EMERGENCY MOTION OF
## DEFENDANTS-APPELLANTS TO ENFORCE THIS COURT'S
## OCTOBER 2 JUDGMENT AND FOR AN INJUNCTION

_____

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Andrew B. Bloomer, P.C.
R. Chris Heck
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL  60654
(312) 862-2000

Theodore B. Olson
   *Counsel of Record*
Miguel A. Estrada
Thomas G. Hungar
Scott P. Martin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

*Counsel for Appellants*
[*additional counsel listed on next page*]

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
(202) 879-5000

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C.  20004
(202) 942-5000

Jeffrey Lennard
DENTONS LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606
(312) 876-8000

George H. Brown
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304
(650) 849-5300

S. Gene Fendler
Don K. Haycraft
R. Keith Jarrett
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA  70139
(504) 581-7979

Kevin M. Downey
F. Lane Heard III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................1

ARGUMENT ............................................................................................3

I.    This Court Has Jurisdiction To Review Orders Relating To The Causal-Nexus Requirement For Class Membership. ................................................................................3

    A.    This Court Has Jurisdiction To Enforce Its Judgment And To Review The District Court's Orders. ...........................................................................3

    B.    The Settlement Agreement Does Not Preclude Appellate Review. ..........................................................6

    C.    The Causal-Nexus Issue And The Scope Of The Injunction Are Properly Before This Panel. .................7

II.    BP Is Entitled To An Injunction. ..........................................10

    A.    BP Has Satisfied The Standard For An Injunction. .....................................................................10

    B.    BP Is Not Judicially Estopped From Defending Its Interpretation Of The Settlement Agreement. ......17

        1.    BP's Prior Statements Are Consistent With The Causal-Nexus Requirement For Class Membership. ......................................................18

        2.    BP's Article III And Rule 23 Concerns Are Not Subject To Judicial Estoppel. .......................23

CONCLUSION ......................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Amchem Prods., Inc.* v. *Windsor*,
    521 U.S. 591 (1997) ................................................................... 3, 14, 15

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ................................................................. 12

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) ................................................................. 12

*Berger* v. *Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) .................................................. 15

*Clayton* v. *Jones*,
    700 F.3d 435 (10th Cir. 2012) .................................................. 5

*Dewey* v. *Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012) .................................................. 15

*Ehrheart* v. *Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) .................................................. 16

*Hohn* v. *United States*,
    524 U.S. 236 (1998) .................................................................. 7

*In re: Deepwater Horizon*,
    732 F.3d 326 (5th Cir. 2013) ........................................... *passim*

*In re Deepwater Horizon*,
    808 F. Supp. 2d 943 (E.D. La. 2011) .................................... 17

*Ins. Corp. of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982) ................................................................. 23

*Montez* v. *Hickenlooper*,
    640 F.3d 1126 (10th Cir. 2011) ............................................... 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Osterneck* v. *Ernst & Whinney*,
489 U.S. 169 (1989) ............................................................... 4

*Piambino* v. *Bailey*,
757 F.2d 1112 (11th Cir. 1985) ............................................. 6

*Sierra Club, Lone Star Chapter* v. *FDIC*,
992 F.2d 545 (5th Cir. 1993) ............................................... 13

*Strong* v. *BellSouth Telecomms., Inc.*,
137 F.3d 844 (5th Cir. 1998) ............................................... 23

*Tollett* v. *City of Kemah*,
285 F.3d 357 (5th Cir. 2002) ................................................. 6

*United States* v. *Int'l Bhd. of Teamsters*,
905 F.2d 610 (2d Cir. 1990) .................................................. 7

*United States* v. *Jacobson*,
15 F.3d 19 (2d Cir. 1994) ...................................................... 5

*United States* v. *Knowles*,
29 F.3d 947 (5th Cir. 1994) ................................................... 7

*Walker* v. *U.S. Dep't of Hous. & Urban Dev.*,
99 F.3d 761 (5th Cir. 1996) ................................................... 4

*Waters* v. *Int'l Precious Metals Corp.*,
237 F.3d 1273 (11th Cir. 2001) ............................................. 7

*Wells Fargo Bank, N.A.* v. *Oparaji*,
698 F.3d 231 (5th Cir. 2012) ............................................... 17

## **Statutes**

28 U.S.C. § 1291 ....................................................................... 7

28 U.S.C. § 1292 ......................................................... 2, 4, 5, 7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

28 U.S.C. § 1651...................................................................................6

28 U.S.C. § 2106...................................................................................5

## Rules

Fed. R. App. P. 4 ..................................................................................4

Fed. R. App. P. 23 ..........................................................................*passim*

Fed. R. Evid. 1006................................................................................13

## Other Authority

15A Charles Alan Wright, *et al.*,
    Fed. Prac. & Proc. § 3901 (2d ed. 1992) ..................................................7

## CERTIFICATE OF INTERESTED PERSONS

No. 13-30315
(consolidated with No. 13-30329)

IN RE: DEEPWATER HORIZON

_____

LAKE EUGENIE LAND & DEVELOPMENT, INC.; BON SECOUR FISHERIES, INC.;
FORT MORGAN REALTY, INC.; LFBP #1, LLC D/B/A GW FINS;
PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC;
ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN;
RONALD LUNDY; CORLISS GALLO; JOHN TESVICH; MICHAEL GUIDRY;
HENRY HUTTO; BRAD FRILOUX; AND JERRY J. KEE,
on behalf of themselves and all others similarly situated,
Plaintiffs–Appellees,

v.

BP EXPLORATION & PRODUCTION INC.;
BP AMERICA PRODUCTION COMPANY; AND BP P.L.C.,
Defendants–Appellants.

The undersigned counsel of record certifies that the certificate of interested persons set forth in BP's emergency motion is still accurate, except for the addition of the following persons and entities:

Phillip A. Wittman
John M. Landis
STONE PIGMAN WALTHER WITTMAN LLC
546 Carondolet Street
New Orleans, LA 70130-3588
(504) 581-3200

    /s/ Theodore B. Olson
Theodore B. Olson

*Attorney of Record for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.*

# INTRODUCTION

BP's emergency motion asks this Court to enforce its October 2 judgment by entering an injunction that implements the settlement agreement's threshold causal-nexus requirement for class membership. *See* Emergency Motion ("Mot.") 10-49.  In response, Class Counsel barely contest any of BP's arguments for injunctive relief.  In particular, they have no answer to BP's showing that footnote 1 of Exhibit 4B of the agreement explicitly *precludes* application of that Exhibit's objective causation tests in determining class membership.  Thus, the class-definition's requirement that class members must have "suffered" injury "as a result of" the spill (Agreement § 1.3.1.2 (R.4071)) must be applied without reference to Exhibit 4B, rendering all of Class Counsel's interpretive and estoppel arguments irrelevant.

Class Counsel also do not dispute that BP will be harmed absent an injunction, that the threatened irreparable injury to BP outweighs any alleged harm to Business Economic Loss ("BEL") claimants, or that an injunction will promote the public interest.  Nor do Class Counsel or the district court contest that the Court-Supervised Settlement Program ("CSSP") is paying large numbers of awards to claimants whose alleged injuries are not traceable to the oil spill.  To the contrary, in an unusual order issued after BP filed its notice of appeal, the district court responded to some of the arguments set forth in BP's emergency motion here, but nowhere in that order did it take issue with BP's evi-

dentiary showing that large numbers of awards have been made to claimants with no causal nexus to the spill. There is accordingly no dispute that, absent an injunction, BP will be irreparably harmed.

Rather than dispute the foregoing points, Class Counsel contend that this Court lacks jurisdiction, that BP is judicially estopped from seeking to enforce the causal-nexus requirement for class membership, and that Rule 23, the Rules Enabling Act, and Article III are irrelevant to the question whether the settlement agreement imposes a causal-nexus requirement. Those arguments are meritless.

This Court clearly has jurisdiction over the district court's orders on multiple grounds: the collateral order doctrine, 28 U.S.C. § 1292(a)(1), this Court's retention of continuing jurisdiction over the interpretive questions identified in the October 2 decision, and the Court's inherent authority to compel compliance with its judgments.

Moreover, BP is not judicially estopped from pressing its long-standing position that the settlement agreement compensates only claimants whose injuries were caused by the spill. BP has consistently argued the class-membership/causation point that it now reiterates before this Court, beginning even before the district court approved the settlement. The supposedly contrary statements cited by Class Counsel involve a *different* issue—the application of Exhibit 4B—and not the threshold question of class membership. And even if there were any ambiguity on the interpretive question presented, that ambiguity would

have to be resolved in favor of BP's interpretation, because Class Counsel's contrary interpretation would defeat class certification and settlement approval and nullify the agreement. *See In re: Deepwater Horizon*, 732 F.3d 326, 343 (5th Cir. 2013) (opinion of Clement, J.).

Finally, Class Counsel are wrong to contend that Rule 23, the Rules Enabling Act, and Article III do not apply in assessing the validity of a class settlement. That argument is foreclosed by (among other things) the United States Supreme Court's decision in *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591 (1997), and by settled principles of Article III standing. Nor could the settlement agreement survive without a causal-nexus requirement for class membership. Rule 23 approval was a material component of the parties' agreement, and without a causal-nexus requirement for class membership such approval is impossible.

## ARGUMENT

## I. This Court Has Jurisdiction To Review Orders Relating To The Causal-Nexus Requirement For Class Membership.

### A. This Court Has Jurisdiction To Enforce Its Judgment And To Review The District Court's Orders.

Class Counsel contend that this Court lacks jurisdiction because the orders from which BP has appealed are not final and appealable under Rule 54. Opp. 5. That is incorrect. This Court has jurisdiction to

review the orders on multiple independent grounds.[1]

*First*, the district court's October 18 order rejecting the causal-nexus requirement and its November 15 order refusing to modify that ruling are appealable under the collateral order doctrine because they: "(1) conclusively determine[d] the disputed question; (2) resolve[d] an issue that is completely separate from the merits of the action; and (3) would be effectively unreviewable on appeal from a final judgment." *Walker* v. *U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 766 (5th Cir. 1996). As Class Counsel concede (Opp. 6), the challenged orders conclusively rejected BP's interpretation of the settlement agreement. And it is undisputed that the district court's refusal to enforce the causal-nexus requirement will lead to the payment of thousands of claims for injuries unconnected to the spill. This panel has already held that such interpretive disputes are separate from the underlying merits and are reviewable under the collateral order doctrine. 732 F.3d at 332 n.3.

*Second*, the October 18 and November 15 orders are appealable under 28 U.S.C. § 1292(a)(1), which permits interlocutory review of orders "granting, . . . , modifying, refusing[,] . . . or refusing to . . . modify

---

[1] BP's November 7, 2013 motion to amend the district court's October 18 order issuing a preliminary injunction and the October 25 scheduling order (Ex. O) tolled the time to appeal from those orders. *See* Fed. R. App. P. 4(a)(4)(A)(iv); *Osterneck* v. *Ernst & Whinney*, 489 U.S. 169, 174 (1989). Thus, BP's notice of appeal (filed November 21, 2013) is timely.

injunctions." BP moved the district court for an injunction restraining payments to claimants that lack a causal nexus to the spill, Ex. H at 2, but the October 18 order denied that requested relief. *See* Ex. B at 4-6. It is therefore appealable under Section 1292(a)(1) as an order refusing BP's requested injunction. Similarly, the November 15 order denied BP's motion to amend the October 18 preliminary injunction to enforce the causal-nexus requirement. Ex. O at 1 (footnote omitted); *see also* Ex. Y at 1. It is therefore appealable as an order refusing to modify an injunction.

*Third*, this panel retained jurisdiction over BP's appeal in No. 13-30315 pending remand. *See* 732 F.3d at 346. The panel thereby exercised its authority to "require such further proceedings to be had as may be just under the circumstances," 28 U.S.C. § 2106, which allows a court to retain jurisdiction without the need for a new notice of appeal. *See*, *e.g.*, *United States* v. *Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994); *Clayton* v. *Jones*, 700 F.3d 435, 444 (10th Cir. 2012). This panel's October 2 opinion unambiguously retains jurisdiction to review the causal-nexus requirement after the district court considered that issue on remand. Both Judge Clement and Judge Southwick instructed the district court to consider the issue of causation on remand. *See* 732 F.3d at 344 (opinion of Clement, J.); *id.* at 345-46 (majority opinion); *id.* at 346-47 (Southwick, J. concurring). The causation issue therefore falls under

this panel's retained jurisdiction.[2]

## B. The Settlement Agreement Does Not Preclude Appellate Review.

In a further attempt to resist this Court's review, Class Counsel belatedly assert that the settlement agreement bars this Court's review of the district court's interpretive rulings. Opp. 5-6. This panel has already rejected that argument because "the parties clearly intended a broader interpretation" of the agreement—"one that retained [BP's] right to appeal to this court—as shown by BP's appeal and Class Counsel's failure to object." 732 F.3d at 332 n.3. In any event, the settlement agreement does not abrogate BP's right to appellate review of the district court's erroneous interpretations of the agreement.

A bedrock principle of federal appellate review is that aggrieved litigants may appeal from adverse district court rulings that meet the

---

[2] In addition, this panel has ample authority under the All Writs Act, 28 U.S.C. § 1651, to compel compliance with its own judgment. "A lower court on remand must implement both the letter and spirit of the appellate court's mandate." *Tollett* v. *City of Kemah*, 285 F.3d 357, 364 (5th Cir. 2002) (quotation marks, emphasis, and brackets omitted). It "may not disregard the explicit directives of that court." *Id.* (quotation marks omitted). If it does, "the aggrieved party may apply . . . for enforcement." *Piambino* v. *Bailey*, 757 F.2d 1112, 1119-20 (11th Cir. 1985). Even if jurisdiction were lacking (and it is not), mandamus would be appropriate to compel the district court to enjoin awards to claimants who experienced no injury "traceable to loss from" the spill, as instructed by this panel. 732 F.3d at 345.

criteria for appealable orders. *See*, *e.g.*, *Hohn* v. *United States*, 524 U.S. 236, 241 (1998); 28 U.S.C. §§ 1291, 1292. Waiver of a known right requires proof of an "intentional relinquishment or abandonment of" that right. *United States* v. *Knowles*, 29 F.3d 947, 951 n.2 (5th Cir. 1994) (quotation marks omitted). This requirement is fully applicable to waivers of appellate rights in settlement agreements. *See* 15A Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 3901 (2d ed. 1992).

The settlement agreement contains no language, let alone clear and unequivocal language, waiving BP's appellate rights. Parties to a settlement agreement do not waive appellate rights merely by establishing a claims-administration program that vests supervisory authority in the district court. Rather, any waiver of appellate review must be clear and unequivocal. *See Montez* v. *Hickenlooper*, 640 F.3d 1126, 1131-32 (10th Cir. 2011); *Waters* v. *Int'l Precious Metals Corp.*, 237 F.3d 1273, 1276 (11th Cir. 2001); *United States* v. *Int'l Bhd. of Teamsters*, 905 F.2d 610, 615 (2d Cir. 1990). BP made no such waiver here.

## C. The Causal-Nexus Issue And The Scope Of The Injunction Are Properly Before This Panel.

Class Counsel also err in claiming that "the arguments in BP's Motion appear directed, not to this Panel, but to the Panel presiding over the issue of Rule 23 approval, in No. 13-30095." Opp. 7.

*First*, BP's appeal presents a straightforward matter of contract interpretation that is properly before this panel under its retained ju-

risdiction in No. 13-30315 and is directly intertwined with the issues discussed in this Court's October 2 decision. As explained (*see supra* Part I-A), this panel remanded to the district court to consider, *inter alia*, the causal-nexus requirement for class membership and to enter an injunction "tailored" to prevent payments to claimants that did not experience injury "*traceable to loss* from" the spill. 732 F.3d at 345 (emphasis added). Moreover, this panel expressly retained jurisdiction over the remand. *Id.* at 346. BP's emergency motion thus falls exclusively within this panel's authority to enforce its judgment.[3]

*Second*, the issues raised by the emergency motion are distinct from the issues properly before the panel in No. 13-30095. As Class Counsel explained in a letter to the 13-30095 panel, the appeal before this panel involves "contract interpretation as between the parties," whereas No. 13-30095 "asks whether the absent class members are well served by the settlement." Letter from James Parkerson Roy, et al., at 3-4, *In re Deepwater Horizon*, No. 13-30095 (5th Cir Oct. 18, 2013).

Ruling on BP's motion will not usurp the fairness panel's authority to determine whether absent class members are well served by the

---

[3] Out of an abundance of caution, BP also filed a new notice of appeal from the orders denying its request to enforce the agreement's causal-nexus requirement, and has moved to consolidate that appeal with No. 13-30315 in view of the clearly overlapping subject matter. For that reason as well, this panel is clearly the proper panel to consider the issues raised in BP's emergency motion.

settlement. Instead, it will simply clarify the proper interpretation of the settlement agreement—the issue before this panel. BP has not asked this panel to review the district court's class certification and settlement approval; rather, BP is seeking to enforce the causal-nexus requirement for class membership in order to "*avoid[]* the difficult class certification and standing problems that result from" the orders below. Mot. 17 (emphasis added). Like Judge Clement, BP raises the issues of Rule 23, the Rules Enabling Act, and Article III only insofar as they inform the interpretation of the settlement. *Accord* 732 F.3d at 343 (opinion of Clement, J.) ("[T]he district court should have rendered the Settlement lawful *by adopting [BP's] interpretation*." (emphasis added)); *id.* at 344 ("Such an interpretation . . . can be considered in evaluating the correct interpretation of possible ambiguities in this agreement.").

Interpretation of the settlement agreement cannot await review and determination of the settlement by the fairness panel. The interpretive question is before this panel because it was part of the remand, and accordingly this panel needs to decide that question in order to inform the fairness panel's resolution of the issues before it. Moreover, the Claims Administrator's processing and payment of claims with no causal nexus to the spill flouts this Court's October 2 decision, violates the settlement agreement's causal-nexus requirement for class membership, and risks hundreds of millions of dollars in potentially irrecoverable losses to BP, so immediate relief from this panel is necessary.

9

## II.    BP Is Entitled To An Injunction.

### A.    BP Has Satisfied The Standard For An Injunction.

In keeping with the criteria for an injunction, BP's emergency motion demonstrated:  (1) that BP is likely to succeed on the merits of the causal-nexus issue; (2) that it will be irreparably harmed absent an injunction; (3) that any threatened harm to it outweighs any alleged harm to BEL claimants; and (4) that an injunction will promote the public interest.  *See* Mot. 10-49.  Class Counsel do not contest BP's arguments regarding the second, third, and fourth factors.

Significantly, Class Counsel concede many of BP's arguments with respect to the merits of the interpretive issue presented on appeal.  In particular, neither Class Counsel nor the district court contest that footnote 1 of Exhibit 4B unambiguously limits the application of the BEL framework to claimants "included within the Economic Class definition," Agreement Ex. 4B, at 1 n.1 (R.4260).  *See* Mot. 34-35.  They do not confront the cases cited by BP establishing that a class cannot be certified unless the class is limited to claimants that possess a colorable claim of loss caused by the defendant.  *See* Mot. 31-33.  And they do not contest the evidence establishing that the Claims Administrator has already awarded hundreds of millions of dollars to claimants that are not class members because their alleged injuries have no causal nexus to the spill, and that the Claims Administrator will continue to do so unless the settlement agreement's causal-nexus requirement is enforced.

The merits arguments Class Counsel do make are unavailing.

**1.** Class Counsel ask this Court to ignore the plain language of the agreement limiting BEL claims to "[l]oss . . . as a result of" the Deepwater Horizon Incident, Agreement § 1.3.1.2 (R.4071), simply because that section is described as a "summary." *See* Opp. 8. Yet Class Counsel never address BP's showing that numerous other provisions from the release, Class Notice, Settlement Website, Instruction Booklet, and Claim Form also reiterate the causal-nexus requirement of class membership. *See* Mot. 12-15.

Class Counsel also continue to disregard the distinction between class membership and right to relief. Thus, Class Counsel rely on Section 5.3.2.3 of the agreement, which states that "'[t]he causation requirements for [BEL] Claims are set forth in Exhibit 4B.'" Opp. 9 (emphasis omitted). But Section 5.3.2.3 explicitly states that it applies only "to Business Economic Loss Claimants," R.4096, a defined term that encompasses only an entity or individual "which or who is *an Economic Class Member*." Agreement § 38.15 (R.4159) (emphasis added). Thus, the agreement confirms over and over again that Exhibit 4B does not come into play until *after* class membership has been determined, necessarily including satisfaction of the causal-nexus requirement that is repeatedly expressed as a prerequisite to class membership. *See* Mot.

33-36.[4]

Indeed, Class Counsel have no response to BP's showing that Exhibit 4B, by its own terms, applies only to claimants "included within the Economic Class definition." Ex. 4B at 1 n.1 (R.4260). Thus, while this panel correctly described the operation of Exhibit 4B in stating that "alternative causes of losses were irrelevant if the financial figures supported that a loss occurred," 732 F.3d at 338, that principle applies only *after* class membership has been confirmed, and only for determining whether the claimant will be entitled to recover its losses. That reading is confirmed by Exhibit 4C, which recognizes that the focus of lost prof-

---

[4] Class Counsel also rely on the definition of "Economic Damages," *see* Opp. 9 & n.15, but the full definition simply confirms the need for a colorable claim of causal nexus at the class-membership step: "Economic Damage shall mean loss . . . allegedly *arising out of, due to, resulting from, or relating in any way to*, directly or indirectly, the Deepwater Horizon Incident . . . ." Agreement § 38.57 (R.4164-65) (emphasis added). The word "allegedly" in that definition aligns with the requirement that class members must have colorable claims of causation. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 677-80 (2009). That understanding is confirmed by Exhibit 4A, which requires all claimants to sign a Claim Form that asserts under penalty of perjury that their claims are for damages "*arising from*" the spill, R.14868 (emphasis added), an assertion that the Claims Administrator is expressly empowered to "verif[y]" in determining class membership, Ex. 4A § 1 (R.4255). While claimants need not affirmatively prove causal nexus, an allegation of causation must at least be "plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). If it is not, the Claims Administrator must "verif[y]" whether the claimant is properly a member of the class before proceeding to apply Exhibits 4B and 4C.

its analysis is on losses that would not have occurred in the absence of the spill. *See* Agreement Ex. 4C at 1 (R.__) (Exhibit 4C "compares the actual profit of a business during a defined post-spill period in 2010 to the profit that the claimant *might have expected to earn in the comparable post-spill period of 2010* (emphasis added)).

**2.** Class Counsel also contend that a declaration of BP's Counsel identifying and summarizing numerous improper awards is "inadmissible" and "non-evidentiary." Opp. 14. But a party may introduce a "summary" to "prove the content of voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. At the preliminary injunction stage, moreover, affidavits may be relied upon. *See, e.g.*, *Sierra Club, Lone Star Chapter* v. *FDIC*, 992 F.2d 545, 551 (5th Cir. 1993). Tellingly, Class Counsel never objected to BP's evidence below and has never identified any error in BP's summary of the disputed claims. Had Class Counsel objected and the district court desired additional proof, BP could have introduced the original claim files under seal. Given the undisputed exigency of BP's request for relief, Class Counsel's objection is not only meritless, it comes too late.

Regardless, the Rumsey declaration to which Class Counsel belatedly object (*see* Ex. Q) is only part of the record evidence conclusively establishing that the Settlement Program has issued and will (unless enjoined by this Court) continue to issue numerous awards for injuries that have no connection to the spill. The Claims Administrator has al-

ready admitted to this Court that he is paying claims "for losses that a reasonable observer might conclude were not in any way related to the Oil Spill." Brief of Appellees Deepwater Horizon Court Supervised Settlement Program at 16, *In re Deepwater Horizon*, Nos. 13-30315 & 13-30329 (5th Cir. May 24, 2013) (emphasis added). Moreover, the record also contains two unrebutted expert declarations establishing that vast numbers of awards have already been issued for injuries sought by non-class members in that they likely have no causal nexus to the spill. *See* Ex. R ¶ 27 (economic analysis "suggests that BEL offers frequently compensate claimants for losses that are not spill-related); *see id*. ¶¶ 7, 15-27; Ex. E ¶¶ 23-24. Neither Class Counsel nor the district court point to any basis for disputing BP's unrebutted evidentiary showing.

**3.** In response to BP's arguments regarding Rule 23, the Rules Enabling Act, and Article III, Class Counsel never dispute that certification of a class with no colorable claims is (at least for a litigation class) inconsistent with the requirements of adequacy, commonality, typicality, predominance, ascertainability, and fairness. They merely suggest that these requirements should be relaxed when certifying a *settlement* class. *See* Opp. 29-32. Supreme Court precedent forecloses that argument. The "dominant concern" of class certification—ensuring that "a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives"—"persists when settlement, rather than trial, is proposed." *Amchem*, 521 U.S. at 621.

Indeed, as Judge Clement explained, the "specifications of Rule 23 designed to 'block[] unwarranted or overbroad class definitions . . . demand undiluted, even heightened, [judicial] attention in the settlement context.'" 732 F.3d at 343 (quoting *Amchem*, 521 U.S. at 620). Adequacy, for example, "'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent,'" *Berger* v. *Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001) (quoting *Amchem*, 521 U.S. at 625), and "provides structural protections during the process of bargaining for settlement," *Dewey* v. *Volkswagen Aktiengesellschaft*, 681 F.3d 170, 189 n.19 (3d Cir. 2012). Without those protections, there can be no assurance that Class Counsel did not sacrifice larger payouts to legitimate class members to secure payments to "persons with marginal or potentially worthless claims." Mot. 20-21 (quoting R.12181-82.). Rule 23 applies fully here—as do Article III and the Rules Enabling Act. *See* 732 F.3d at 341 (opinion of Clement, J.).

Class Counsel also contend that the settlement agreement would remain binding even if this Court were to conclude that it does not satisfy the requirements of Rule 23. *See* Opp. 32-34. That is rect. Rule 23 approval was a core, material part of the settlement agreement—there would have been no settlement without it. As Class Counsel explained, "[b]y structuring the settlement as a class settlement, the plaintiffs were able to negotiate additional levels of compensation and other individual and classwide benefits that could not have

been achieved on a piecemeal basis." R.5843.

The settlement must be interpreted in light of that purpose. BP's interpretation not only avoids the difficult statutory and constitutional questions raised by Rule 23, the Rules Enabling Act, and Article III, but also effects the intention of the parties to draft a settlement capable of judicial approval. Class Counsel should not be allowed to persist in defending an interpretation of the agreement that would "imperil" the settlement and invalidate the parties' agreement, 732 F.3d at 344 (opinion of Clement, J.); *accord id.* at 346-47 (Southwick, J., concurring). It is difficult to understand why the validity of the class settlement should be jeopardized to benefit claimants with no damages from the spill.

Moreover, BP has the right to terminate the agreement and cease funding the settlement trust if judicial approval of the settlement is overturned. *See* Agreement § 21.3.3 (R.4150). In that event, the "Agreement shall . . . become null and void and shall have no further effect with respect to any Party to the Deepwater Horizon Economic Litigation." *Id.* § 21.3 (R.4149). While the CSSP can continue processing individual claims *if* BP opts to provide funding, BP has no obligation to do so, and indeed "any unspent funds shall revert to BP," *id.* § 21.3.9 (R.4151); *see also id.* § 5.12.3 (R.4117-18). In short, class approval is a condition of BP's payment obligations under the agreement, and the agreement will terminate without it. *Cf. Ehrheart* v. *Verizon Wireless*,

609 F.3d 590, 592-93, 603 n.5 (3d Cir. 2010).[5]

### B. BP Is Not Judicially Estopped From Defending Its Interpretation Of The Settlement Agreement.

A party asserting judicial estoppel must show: (1) that "the party against whom judicial estoppel is sought has asserted a legal position that is 'plainly inconsistent' with a position asserted in a prior case"; (2) that "the court in the prior case accepted that party's original position, thus creating the perception that one or both courts were misled"; and (3) that "the party to be estopped has not acted inadvertently." *Wells Fargo Bank, N.A.* v. *Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012). Although Class Counsel devote most of their opposition to contending that BP is judicially estopped from defending the settlement agreement's causal-nexus requirement for class membership, *see* Opp. 14-28, Class Counsel do not cite this standard or address the last two criteria.

Moreover, the statements cited by Class Counsel overwhelmingly accord with BP's long-standing interpretation that the settlement agreement includes a causal-nexus requirement as part of the class definition. In any event, judicial estoppel cannot overcome a lack of stand-

---

[5] Class Counsel contend further that the Oil Pollution Act of 1990 was meant to cover indirect damages. Opp. 13. As confirmed by the lead order they cite, however, OPA allows recovery for economic losses "'*resulting from*' or '*due to*' [an] oil spill," *In re Deepwater Horizon*, 808 F. Supp. 2d 943, 959 (E.D. La. 2011) (emphases added)—not losses that have no connection to a spill.

ing or a failure to satisfy Rule 23.

### 1. BP's Prior Statements Are Consistent With The Causal-Nexus Requirement For Class Membership.

BP has maintained throughout the settlement approval process that the settlement agreement grants relief only to claimants who suffered loss as a result of the spill. *See* Mot. 36-39. Class Counsel's long list of quotations purporting to suggest otherwise boils down to four propositions that BP has not denied: (1) the BEL framework set forth in Exhibit 4 of the settlement agreement relies on "objective, data-driven methodologies," Opp. 19 (quoting R.15846); (2) Exhibit 4B presumes causation for certain claimants, *id.* at 14-23 (quoting R.1990, 6390-91, 6416, 6695 ¶ 24, 15868, 8559 ¶ 117, 8560 ¶ 122); (3) claimants subject to this presumption "will not be required to provide documentation demonstrating causation" under Exhibit 4B, *id.* at 14-15 (quoting R.1993); and (4) "*[o]nce the causation tests are satisfied*, all revenue and variable profit declines during the Compensation Period are presumed to be caused entirely by the spill," *id.* at 22-23 (quoting R.8559 ¶ 117, 8560 ¶ 122, 8562 ¶ 126); *see also id.* at 15 (quoting Ex. T at 4); *id.* at 20-21 (quoting R.15846, 15848). Class Counsel take these propositions out of context by failing to distinguish between the threshold question of class *membership* and the BEL compensation framework, or between a *claimant's* evidentiary burden and the *Claims Administrator's* duty to "verif[y]" "[a]ll statements made in . . . the Claim Form." Agreement

18

Ex. 4A at 1 (R.4255).

When a claimant submits a claim, the Claims Administrator must first determine whether the claimant is a class member. *See* Mot. 11-12. For BEL claims, a claimant is a class member if (1) it meets the geographic prerequisites to class membership; (2) it "suffered" "[l]oss . . . as a result of the Deepwater Horizon Incident"; and (3) it is not an excluded entity. *Id.* at 12 (citing Agreement §§ 1, 1.3.1.2 (R.4069, 4071)). BP has consistently recognized that class members are not required to submit evidence of causation with their claims, *see* Opp. 14-15 (quoting R.1993), but that has nothing to do with the Claims Administrator's authority and responsibility to "verif[y]" statements in the claims forms by obtaining additional information necessary to determine class membership when the claimant's allegations of causation are not colorable. Agreement Ex. 4A (R.4255).

Only *after* a claimant qualifies as a class member may the Claims Administrator apply the BEL framework, including the causation requirements of Exhibit 4B and the loss calculation requirements of Exhibit 4C, to determine if the claimant is entitled to relief. Nowhere in Class Counsel's nearly 15 pages of quotations (Opp. 14-28) do they identify any instance in which BP stated otherwise. Instead, BP explained only that, under Exhibit 4B, causation is presumed for certain *class members*. *See* Opp. 14-23 (quoting R.1990, 6390-91, 6416, 6695 ¶ 24, 15868, 8559 ¶ 117, R.8560 ¶ 122).

BP's interpretation of the settlement agreement likewise accords with its statements that the BEL framework is objective. *See*, *e.g.*, Opp. 19 (quoting R.15846). Exhibits 4B and 4C establish objective criteria that accountants can apply without difficulty. But that framework comes into play only for class members, and class members are only those who have a colorable claim of causation.

Moreover, Class Counsel err in relying on the Claim Administrator's October 10 policy announcement that he "will not evaluate potential alternative causes of the claimant's economic injury" and BP's purported statements at the December 12, 2012 *in camera* conference. Opp. 24-25 (quoting R.15863-64). That policy announcement arose in the context of a question about the proper application of the BEL compensation framework to class members. But that announcement does not address the threshold causal-nexus requirement for class membership. Indeed, it is undisputed that at the very December 12 *in camera* conference relied upon by Class Counsel, BP, in connection with the discussion about the Supplemental Information Program ("SIP") directed at potential claimants, agreed only that Exhibit 4B was objective. But nothing in the Court's December 12 email suggests that the threshold question of class membership was discussed. Indeed, documents submitted to the court itself immediately before and after the December 12 hearing confirm BP's position. Ex. Z (Godfrey Declaration and Exhibits).

Class Counsel's attempts to transform BP's statements about Exhibit 4B into concessions that the settlement agreement has no causal-nexus requirement for class membership are wholly unpersuasive. As discussed in the emergency motion (Mot. 37-38), BP's December 7, 2012 letter to the district court regarding proposed settlement-related advertising expressed the very position that BP is urging in this motion: "the Settlement Agreement requires a connection to the spill." Ex. W at 3-4.[6] Moreover, two days after the December 12 conference, BP expressly reiterated the settlement's causal-nexus requirement in writing by emailing Class Counsel about clarifying the proposed ads to indicate that claimants may qualify as class members only if they "had a loss *as a result of* the Spill" or "were damaged *as a result of* the Spill." Ex. Z (Ex. C) at 1 (emphases added).

BP and Class Counsel ultimately agreed to language stating that "Damages must be *as a result of* the Deepwater Horizon Incident as provided in the Deepwater Horizon Economic and Property Damages Settlement Agreement." Ex. Z ¶¶ 8-12 & n.2. Class Counsel now mischaracterize this language, suggesting that it amounts to a concession

---

[6] And just the day prior to the *in camera* hearing, BP had sent Magistrate Judge Shushan a letter on December 11, 2012, stating: "The vice in the proposed SIP spots is that by omitting the requirement that the spill caused the loss, the spots would encourage viewers to submit claims for losses that have nothing to do with the oil spill and are not covered by the Settlement." Ex. Z (Ex. B) at 3.

that only "the objective terms and provisions of Exhibit 4B" are relevant to causation. Opp. 9-10. But the negotiated language says no such thing; instead, it confirms that the settlement agreement requires that damages must "result" from the spill, and BP's interpretation of the threshold causal-nexus requirement for class membership is entirely consistent with, and in furtherance of, that understanding. Moreover, BP continued to insist on enforcement of the causal-nexus requirement in unambiguous terms thereafter: on February 15, 2013, for example, BP explained to the district court that the ads "divorce[d], almost entirely, claimed damages from any causal nexus with the Deepwater Horizon Oil Spill. That is inappropriate, confusing and misleading—and also contrary to the express terms of the parties' Settlement Agreement." Ex. Z (Ex. I) at 1. The district court did not authorize the ads.

Class Counsel's attempt to turn agreed-upon language requiring a causal nexus for class membership into a concession that no nexus is required is wholly unpersuasive. Class Counsel have not cited any BP assertion that is "plainly inconsistent" with the threshold causal-nexus requirement. They are left with—at most—snippets of imprecision in a record amassed over nearly two years that runs into the tens of thousands of pages. That is far afield from a litigant deliberately misleading the court, as required to apply judicial estoppel.

## 2. BP's Article III And Rule 23 Concerns Are Not Subject To Judicial Estoppel.

In any event, what BP previously said or did not say is not controlling, because the causal-nexus issue goes to the Court's Article III jurisdiction and the settlement's compliance with Rule 23. "[P]rinciples of estoppel [also] do not apply" to questions of federal court subject matter jurisdiction. *Ins. Corp. of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (citation omitted). Similarly, the Court has an independent duty to evaluate compliance with Rule 23 that cannot be waived. *See*, *e.g.*, *Strong* v. *BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998). "A class settlement is not a private agreement between the parties. It is a creature of Rule 23, which authorizes its use to resolve the legal claims of a class 'only with the court's approval.'" *Deepwater Horizon*, 732 F.3d at 343 (opinion of Clement, J.) (quoting Fed. R. Civ. P. 23(e)); *accord id.* at 347 (Southwick, J., concurring) (agreeing that "class actions are not meant to be vessels for achieving 'global peace' by creating substantive rights that would not otherwise exist"). Accordingly, regardless of any litigant's statements, this Court must determine whether the settlement complies with Rule 23, the Rules Enabling Act, and Article III.

The panel recognized that the Claims Administrator's interpretation of the settlement agreement jeopardizes approval of the settlement. *See* 732 F.3d at 344 (opinion of Clement, J.) (Class Counsel's "interpre-

tation could imperil a final approval of the settlement"); *id.* at 346 (Southwick, J., concurring) (expressing concern that Judge Clement's "observations imply . . . an invalidity to the Settlement Agreement's causation framework"); *see id.* (agreeing that Judge Clement's analysis of the causation issue was "logical").  In light of the dire threat to appellate approval posed by Class Counsel's distortion of the settlement to include claims with no colorable causal nexus to the spill, BP is entitled to defend the settlement's validity by showing that, properly interpreted, it does not run afoul of the requirements of Rule 23 and Article III.

## CONCLUSION

This Court should hold that the district court has misinterpreted the settlement agreement by failing to enforce the class definition's causal-nexus requirement, and should enjoin any further payments to BEL claimants whose injuries are not traceable to the spill.

November 25, 2013

Respectfully Submitted,

/s/ Theodore B. Olson

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Andrew B. Bloomer, P.C.
R. Chris Heck
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
(202) 942-5000

Jeffrey Lennard
DENTONS LLP
233 S. Wacker Dr., Suite 7800
Chicago, IL 60606
(312) 876-8000

Theodore B. Olson
   *Counsel of Record*
Miguel A. Estrada
Thomas G. Hungar
Scott P. Martin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

George H. Brown
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304
(650) 849-5300

S. Gene Fendler
Don K. Haycraft
R. Keith Jarrett
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
(504) 581-7979

Kevin M. Downey
F. Lane Heard III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Attorneys for BP Exploration & Production Inc.,*
*BP America Production Company, and BP p.l.c.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2013, an electronic copy of the foregoing Reply in Support of Emergency Motion to Enforce this Court's October 2 Judgment and for an Injunction was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.


   /s/ Theodore B. Olson
Theodore B. Olson
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

**CERTIFICATE OF ELECTRONIC COMPLIANCE**

I hereby certify that that, on November 25, 2013, this Reply in Support of Emergency Motion to Enforce this Court's October 2 Judgment and for an Injunction was transmitted to the Clerk of the United States Court of Appeals for the Fifth Circuit through the Court's CM/ECF document filing system, https://ecf.ca5.uscourts.gov.  I further certify that: (1) required privacy redactions have been made pursuant to this Court's Rule 25.2.13, (2) the electronic submission is an exact copy of the paper document pursuant to this Court's Rule 25.2.1, and (3) the document has been scanned with the most recent version of Microsoft Forefront Endpoint Protection and is free of viruses.

  /s/ Theodore B. Olson
Theodore B. Olson
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500